UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
2011 MAY 19 PM 1: 04

<u>Angela Tagliaferri & Betsy Stephens</u>

    PLAINTIFFS

vs.

<u>Winter Park Housing Authority, Cambridge Management Services Inc., Rosalie McMasters, & Cheryl Norton (individuals)</u>

    DEFENDANTS

    Plaintiffs Angela Tagliaferri & Betsy Stephens are filing suit for Discrimination in the terms and conditions of their lease based on Sexual Harrassment and Disability. In addition, Plaintiffs are seeking damages from the above businesses and the following as individuals for Discrimination, Defamation of Character, Landlord Retaliation(FL STAT 83.64), and for Contract Breach of FL Statute 83.57. Cheryl Norton and Rosalie McMasters are also being named seperately as individuals in this lawsuit for discriminatory terms, conditions, privileges or services and facilities. Plaintiffs are alleging violations of sections 804b and 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

    Plaintiffs Tagliaferri and Stephens leased a dwelling located at 305 Balfour Dr. Apt.123 in Winter Park, FL. This dwelling is owned by Defendant Winter Park Housing Authority and is subject to the rules and regulations of Defendant Cambridge Management Services Inc. by and through Defendant Cheryl Norton who manages said property.

Plaintiffs assert that each of them had a sexual relationship with Albert Nieves, the maintenance man that lasted over a period of no greater than two years and no less than one year. Plaintiff Tagliaferri and Stephens allege that as a reult of ending their relationship with Mr. Nieves, all maintenance issues failed to be handled, and all unit inspections were not performed to the same standards as every other unit on said property, and as a result, this unit was allegedly inhabitable to the point that carpeting had to be replaced in every room, kitchen and bathroom tiles had to be replaced and bathtub was resurfaced. All of these actions were only performed because The Winter Park Housing Authority got involved and seen for themselves what the Plaintiff's unit needed in order for it to be in habitable condition again.

For several months Plaintiffs were sporadically without a working refrigerator, where as the temperature would not maintain causing Plaintiffs to become ill. Mr. Nieves refused to help Mr. Julio Rodriguez, his assistant, after Mr. Rodriguez continously asked for his help as his supervisor. Plaintiffs continued to live in the unit without a working refrigerator until the problem culminated on April 28, 2009 when Defendand Cheryl Norton then wrote Plaintiff's a "Landlord's Written Warning" (FL STAT 83.56) for explaining to Mr. Rodriguez that they could not go another month without a working refrigerator, and they were going to contact Winter Park Housing Authority's Lynda Hinckley. Defendant Norton wrote Plaintiffs up for contacting Lynda Hinckley and Ms. Norton also wrote Lynda Hinckley's name in this written warning, thus, causing Plaintiffs to beleive that Ms. Norton was in violation of FL STAT 83.64 which prohibits Landlord Retaliation. Ms. Norton also reinforced in writing Cambridge Management Services' condoning of Albert Nieves to not service Plaintiff's apartment since the sexual favors stopped. There were also several occasions that the Plaintiffs needed emergency maintenance after hours, and Mr Nieves was the only maintenance man on staff. On numerous days when the "after hours" answering service would page him, he would call Plaintiffs and blatenly refuse their smoke detector, to where as the Plaintiffs had to knock on the neighbor's door for help in the middle of the night with the smoke detector going off. These instances also occurred reguarding his refusal to come and fix Plaintiff's refrigerator. Defendant Norton continously stated (verbally and in writtng) that Albert Nieves does not have to give any assistance to Julio Rodriguez, even though Mr. Rodriguez admitted that he was incapable of fixing the refrigerator without the assistance of his supervisor, Albert Nieves. This is one of the primary reasons that the Plaintiffs feel that Cheryl Norton as well as Cambridge Management Services, Inc. as a whole are culpable and should be held liable for the actions of Mr. Nieves, their employee. Although FL STAT 83.51 would have given the Plaintiffs the right to withold rent for failure to maintain the leased premises, however, the Plaintiffs continued to pay their rent early in a "good faith" effort to comply. The Plaintiff's continually lived in deplorable conditions there by rendering the premises wholly untenantable.

Another reason that the Plaintiffs feel that Defendant Cheryl Norton is culpable of Discrimination is the seperate set of rules Defendant Norton bestowed upon them. The Plaintiffs were not permitted to stand on their balcony, or in their own doorway, and later were asked not to look out their window. This was asked of them due to the fact that Mr. Nieves did not want to have to see them, because they would no longer perform sex acts on him. The Plaintiffs were also asked not to attend the community events or to "take turns" with Mr. Nieves going to the events. Ms. Norton was under the false assumption that this was a fair request, however, she failed to realize that all other tennants living there did not have to "take turns" going to all the events. The Plaintiffs should not have been penilized for their refusal to perform sex acts on Mr. Nieves, their company's maintenance man. Plaintiffs were also not permitted to swim in the pool if Mr. Nieves was in the pool area, or if any one of his five relatives living on property, including his wife, were at the pool. These rules were executed on April 28, 2009 at 10:00 AM. Plaintiffs believe that these discriminatory terms, conditions privileges, or services and facilities apply to the discriminatory Acts under Section 818.

Plaintiffs have also named Rosalie McMasters of Cambridge Management Services specially and are also suing her as an individual along with Ms. Norton because Rosalie McMasters first gave Plaintiff Angela Tagliaferri of Apt. 123 a "Seven Days To Vacate" notice claiming that Ms. Tagliaferri was in violation of FL STAT 83.56 (2), claiming that she breached the terms of her lease because Ms. Tagliaferri's refusal to continue sexual favors on Mr. Nieves, was considered as "adverse behavior twards a staff member", and also went on to say Plaintiffs were in the wrong for asking his wife to "please make him stop". Defendant Rosalie McMasters also wrote Plaintiff Betsy Stephens of Apt. 412 a "Seven Day to Cure" for the same reason. When Defendant McMasters realized what she had done, and that this "adverse Behavior" was indeed "not performing sex acts on Mr. Nieves", she quickly rescinded it and told the Plaintiffs if they rescinded their complaints that Angela would not be forced to move and Betsy's "write up" would also be retracted. Rosalie Mcmasters then left her current company at the time which was "Professional Management of Central Florida. These actions occurred by Rosalie McMasters April 16, 2003. She then returned on or about May 2008 with a new company called Cambridge Management Services Inc. This would now be the second illeagal vacate that Defendant Rosalie McMasters was responsible for. The Plaintiffs were told by Defendant Norton that Defendant McMasters was "on board" with forcing the Plaintiffs to move because "Albert wanted them gone" and "they couldn't live in the same community as Albert". For this, Plaintiffs are seeking punitive damages.

The Plaintiffs also feel that The Winter Park Housing Authority is culpable due to the fact that on April 28, 2009, their Executive Director, Ms. Lynda Hinckley, was made aware of the Landlord's Written Warning(FL STAT 83.56), where as the Plaintiffs brought her a copy of this document that stated that they were being wrote up for wanting to contact her. Secondly, The Plaintiffs also made Ms. Hinckley aware of not only their alleged substandard living conditions, but also their seperate set of rules bestowed upon them for refusal to continue sexual favors on their maintenance man. Last of all, Ms. Hinckley was provided a copy of the Plaintiff's nonrenewal notice, where as Ms. Hinckley openly admitted their nonrenewal was "illeagal" because sixty days were not given which was a proven "fact" in writing of their contract breach and of FL STAT 83.57. The Plaintiffs went to Ms. Hinckley on December 14, 2009 hysterical and visibly shaken. Plaintiff Betsy Stephens had collapsed and had a seizure prior to that due to all the stress and duress as this was the only home they had ever known in their entire adult life that in which they were financially responsible for. The Plaintiffs felt that in this thirteenyear period that they were among friends in this close knit community. Ms.Hinckley promised the plaintiffs that she would help them, but, she didn't (Plaintiffs later found out the reason was that Ms.Cheryl Norton had allegedly defamed their character by blatenly lying and telling Ms. Hinckley that Ms. Tagliaferri was carrying a "rock" when Ms.Cheryl Norton allegedly KNEW Ms. Tagliaferri was instead carrying a camera in her hands (not a stone) in which Ms. Angela Tagliaferri took photographs of the deplorable conditions of the jacuzzi for the purpose to relinquish these photos to Ms.Hinckley (these photos will be submitted into evidence at a later date).

On December 16, 2009, Defendant Norton proceded to the Plaintiff's unit yelling and sreaming in front of several witnesses that the Plaintiffs still had to move because "Lynda Hinckley backed her", however, she never mentioned to the Plaintiffs the horrendous LIE she had fabricated to Ms. Lynda Hinckley. ( The Plaintiffs were "unaware" of this nonsense for three months, until it was brought to their attention on April 9, 2010). Ms. Norton stood outside of Plaintiff's unit causing a "scene" so much to the point that several other tennants approached the Plaintiffs stating that "Cheryl was way out of line". The Plaintiffs feel that this action by Ms. Norton was extremely innappropriate and humiliating as it made the entire neighborhood aware of Ms. Norton's decision to non-renew them, with outward statements implying that they were "bad girls", and that Albert Nieves and them could not"live in the same community".This also caused the Plaintiffs to feel that Ms. Norton had total disreguard for them as human beings.

Despite the false accusations made by Defendant Norton, and the adverse opinion she portrayed of Plaintiffs to upper management, Lynda Hinckley Executive Director of the Winter Park Housing Authority) knew that Plaintiffs Angela Tagliaferri and Betsy Stephens were model tennants who always paid their rent

early for thirteen years. Plaintiffs frequently helped the management team, helped to clean the property after the hurricanes, and also helped by volunteering to assist in the building of two playgrounds on two properties. Ms.Lynda Hinckley must have felt that the Plaintiffs were "very good girls", so much so that they were known by the management company as very good friends with Ms. Hinckley. In pictures with the Plaintiffs, Ms. Hinckley was always smiling and appeared to be happy, as did the many cards and letters that Ms. Hinckley sent to the Plaintiffs. That is what has made Ms. Norton's excessive and extreme Defamation of their character devastating to the Plaintiffs. The Plaintiffs did NOT want to have to file a lawsuit for money. They were instead deeply concerned about the Defendants continuing the alleged discriminatory practices, causing the victimization of others. The Plaintiffs tried to resolve this on numerous occassions first, by having a conferance on April 9, 2010 with Cambrigde Management Services, Inc., in which they attempted to explain why it was wrong for Cheryl Norton to breach the lease and to discriminate against them by breaking numerous statutes. At this point in time, the Plaintiffs expressed a desire to move back and felt that they should have been permitted to move back to Winter Park Oaks where all their friends were and where they felt the security of having a community that cared about them. Plaintiffs also felt that if they would have been allowed to move back, their reputation could have been spared and they would no longer be known as the "bad girls" that Cheryl threw out. At this time, they told Defendant Rosalie McMasters that although this move was very costly for them, they didn't care about the money they lost, they just felt that Cambridge should do the right thing and allow them to move back. The Plaintiffs were making a good faith effort to be fair and not even ask for moving expenses. They also had several conversations with Ms. Lynda Hinckley to the same effect as it created quite a challange for Plaintiffs to have to move all their furnature from a two bedroom into a small one bedroom.This was all the Plaintiffs could qualify for being on disability. The Plaintiffs also feel that now their security is greatly compromised in their knew apartment, as they came home one day to a letter from the Seminole County Sherriffs Office warning them of the high crime rate in their area, and also now, Plaintiffs frequently come home to people around them in the neighboring apartments being arrested for various alleged crimes. This has caused the Plaintiffs to live their lives in fear.

    The Plaintiffs have also suffered greatly with their health as a direct result of all the stress and duress caused by the Defendants. The Plaintiffs also found it extremely difficult to have to pack up and move and not be given the allotted time as everyone else. The Plaintiffs were not given the sixty days that the lease required of Defendant Norton, and as a result of

her alleged discriminatory actions, Plaintiffs suffered greatly as Plaintiff Angela Tagliaferri has very painful rheumatoid artheritis and Systemic Lupus causing her severe pain to have to pack up and move in less time than any other person given a nonrenewal. Plaintiff Stephens also suffered a grand mal seizure during this. Ms. Stephens's seizures are usually brought on by stress. The Plaintiffs feel that these actions by Defendant Norton are nothing less than discriminatory. The Plaintiffs believe that in"good  faith" that the only way to stop the "wrong doing" in their alleged discriminatory practices and to ensure that others won't be victimized by Mr. Nieves allegedly causing them to lose their home and Defendant Norton for allegedly breaking statutes and discriminating, Plaintiffs feel that the only alternative left was to file a large lawsuit. The Plaintiffs did not come to this decision easily and tried every other alternative with conferances, conversations, and numerous complaints and felt that this was the only solution left for justice. The Plaintiffs understand that as the "Plaintiffs" they are expected to provide the burden of "proof" in which they are fully prepared to do as they feel they can provide this court with the necessary irrefutable evidence.

   In closing, The Plaintiffs are filing suit for Discrimination in the terms and conditions of their lease based on Sexual Harrassment and Disability. The Plaintiffs allege that in Feb. 2003 all sexual contact with said individual ceased and the harrassment continued for seven consecutive years until Jan. 31, 2010, when the end result of their prolonged neglect of maintenance issues, substandard living conditions, discriminatory terms, conditions, privileges, or services and facilities, culminated with their alleged second illeagal vacate executed under Defendant Rosalie McMasters. The Plaintiff's residency terminated on Jan. 31, 2010. In addition, the Plaintiffs are also seeking punitive damages for Defamation of Character, Landlord Retaliation(FL STAT 83.64), contract Breach(of FL STAT 83.57). The continued alleged harrassment, discriminatory practices, and humiliation over a period of seven years as well as the alleged irreprehensible actions of Defendant McMasters and Defendant Norton has had such an adverse effect on the Plaintiff's reputation, life, and persuit of happiness, it therefore, significantly affected the health and well being of the Plaintiffs. Therefore, The Plaintiffs are seeking damages in the amount of $2,000,000.00

Angela Tagliaferri & Betsy Stephens
825 S. Wymore Rd. Apt. 1A
Altamonte Springs, FL 32714
(407)671-8309